# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

GLENN EISENBERG, on Behalf of Himself and
All Others Similarly Situated,

     Plaintiffs,

    vs.

CREDIT SUISSE AG and JANUS INDEX &
CALCULATION SERVICES LLC,

     Defendants.

——————————————————————x

:  **Civil Action No.**
:
: **CLASS ACTION COMPLAINT**
:
: **JURY TRIAL DEMANDED**
:
:
:
:
:
:
:
:

Plaintiff Glenn Eisenberg alleges the following based upon personal knowledge and belief as to his own acts, and, as to the rest, based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission filings as well as other regulatory filings and reports about the Notes (as defined below).  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.      Plaintiff Glenn Eisenberg brings this securities action on behalf of himself, and as a class action on behalf of all persons or entities who purchased VelocityShares Inverse VIX Short Term Exchange Traded Notes (the "Notes") during the period from January 29, 2018, through February 5, 2018, inclusive ("Class Period").

2.      During the Class Period, the Notes traded on the NASDAQ under the ticker symbol XIV.  There were millions of Notes traded during the Class Period.

3.      The Notes were issued, offered, and sold by defendant Credit Suisse AG ("Credit Suisse").  The Notes are senior unsecured debt obligations of Credit Suisse.

4.      Plaintiff and each member of the Class purchased the Notes pursuant to a registration statement including prospectuses and pricing supplements (collectively, the "Registration Statement") that was active during the Class Period.  The Registration Statement was materially false and misleading about a metric crucially important to investors.  The pricing supplements were issued on the following dates, among others: January 29, 2018, August 18, 2017, June 30, 2017, and August 9, 2016.  The representations relevant to this litigation are identical or substantively similar in the foregoing supplements.

5.      Shortly following the Class Period, after the truth was disclosed, the Notes lost most of their value. The next day, on February 6, 2018, Credit Suisse announced that it is

invoking the early redemption clause in the Registration Statement to terminate the Notes on February 21, 2018.

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under and pursuant to Section 11 of the Securities Act of 1933 ("1933 Act") (15 U.S.C. §§ 77k), and Section 10 of the Securities Exchange Act of 1934 ("1934 Act") (15 U.S.C. § 78(j), and Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5.

7.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the 1933 Act (15 U.S.C. § 77v), Section 27 of the 1934 Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1331.

8.     Venue is proper in this District pursuant to Section 22 of the 1933 Act (15 U.S.C. § 77v), Section 27 of the 1934 Act (15 U.S.C. § § 78aa), and 28 U.S.C. §1391(b).  Defendants transact business in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

9.     In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

10.     Plaintiff Glenn Eisenberg purchased Notes during the Class Period pursuant to or traceable to the Registration Statement and has been damaged thereby.  Plaintiff's transactions in the Notes are identified in the certification appended to this complaint.

11.      Defendant Credit Suisse provides investment services worldwide.  It is headquartered in Zurich, Switzerland, and transacts substantial business in New York out of

offices at 11 Madison Avenue, New York, New York.  Credit Suisse was the issuer of the Notes

and, during the Class Period, was the largest holder of the Notes.

12.     Defendant Janus Index & Calculation Services LLC ("JIC") is headquartered in

Connecticut and transacts business in this District.  JIC served as Credit Suisse's agent for

computing and disseminating the Notes' "Intraday Indicative Value."

### CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who, during

the Class Period, acquired the Notes traceable to the false and misleading Registration Statement

Period (the "Class"), and were damaged thereby.  Excluded from the Class are defendants, their

agents, officers and directors, and any entity in which defendants have or had a controlling

interest.

14.     The members of the Class are so numerous that joinder of all members is

impracticable.  According to Credit Suisse, 10,793,880 Notes (in the stated principal amount of

$107,938,800) were issued and outstanding as of January 26, 2018, and the volume of trading in

the Notes during the Class Period was in the millions.  The Notes were actively traded in an

efficient market.  While the exact number of Class members is unknown to plaintiff at this time

and can only be ascertained through appropriate discovery, plaintiff believes that there are at

least hundreds of members in the proposed Class.  Record owners and other members of the

Class may be identified from records maintained by Credit Suisse and/or transfer agent(s) and/or

broker dealers for the Notes and may be notified of the pendency of this action by mail, using the

form of notice similar to that customarily used in securities class actions.

15.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law, as complained of herein.

16.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

17.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

      (a)     whether the federal securities laws were violated by defendants,

      (b)     whether the Registration Statement contained material misrepresentations or omissions relating to the Notes; and

      (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

18.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### THE REGISTRATION STATEMENT WAS
### MATERIALLY FALSE AND MISLEADING

19.     The Notes provide holders exposure linked to the S&P 500 VIX short-term futures.  The Notes are supposed to increase in value when the S&P VIX short-term futures decline in value, and vice-versa.

20.     The Notes are securities that in general seek to return the inverse of the movement of the VIX futures.

21.     The VIX (often referred to as a "fear index" or "fear gauge") is an index used as a popular measure of market volatility. Although the index itself does not trade, many securities are tied to the value of the VIX.  Chicago Board Options Exchange describes the VIX as follows:

> The Cboe Volatility Index® (VIX® Index) is a leading measure of market expectations of near-term volatility conveyed by S&P 500 Index (SPX) option prices. With the introduction of the VIX® Index in 1993, followed by the launch of trading of VIX futures at Cboe Futures Exchange (CFE) in 2004 and VIX options at Cboe in 2006, there has been a growing acceptance of trading VIX and VIX-linked products as risk management tools.

22.     The Notes trade on the NASDAQ in three sessions: (i) the pre-market session from 4:00 a.m. to 9:30 a.m., (ii) the regular market session from 9:30 a.m. to 4:00 p.m., and (iii) the aftermarket session from 4:00 p.m. to 8:00 p.m. (all New York time).

23.     Critically important to XIV's value is the calculation and publication of the Intraday Indicative Value, which is a calculation based on a formula utilizing the values of an underlying index (as described below) that, in turn,  is calculated based on current month and 2-month VIX futures contracts.  During the Class Period, the relevant VIX futures were the February 2018 and March 2018 contracts.  The Registration Statement describes the Intraday Indicative Value as the true "economic value" of the Notes, stating:

> The "Intraday Indicative Value" for each series of ETNs is designed to approximate the economic value of such series of ETNs at a given time. It is calculated using the same formula as the Closing Indicative Value, except that instead of using the closing level of the applicable underlying Index, the calculation is based on the most recent intraday level of such Index at the particular time.

> ***

> **Investors can compare the trading price of the ETNs (if such concurrent price is available) against the Intraday Indicative Value to determine whether the ETNs are trading in the secondary market at a premium or a discount to the economic value of the ETNs at any given time.**

Emphasis in original.

24.    The "underlying index" for the Notes is the S&P 500 VIX Short-Term Futures Index, which the Registration Statement represents is calculated in real time:

> The level of each Index is calculated in accordance with the method described below. The value of each Index will be published by Bloomberg in real time and after the close of trading on each Index Business Day under the following ticker symbols: [XPVXSPID]
>
> The intraday level of each of the Indices is calculated in real time by S&P on each S&P 500 VIX Futures Business Day using the same methodology as for calculation of the closing level but applying real time prices of the relevant VIX futures contracts.

25.    The Registration Statement represents that the Intraday Indicative value is calculated every 15 seconds:

> The Intraday Indicative Value of the ETNs will be calculated every 15 seconds on each Index Business Day during the period when a Market Disruption Event has not occurred or is not continuing and disseminated over the Consolidated Tape, or other major market data vendor. If the Intraday Indicative Value is equal to or less than zero at any time or the Closing Indicative Value is equal to zero on any Index Business Day, the Closing Indicative Value on that day, and all future days, will be zero. See "Description of the ETNs—Intraday Indicative Value" in this pricing supplement. JIC or its affiliate is responsible for computing and disseminating the Intraday Indicative Value.

26.    The Registration Statement defines a Market Disruption Event as follows:

> A "Market Disruption Event" will be any event that, in the determination of the Calculation Agents, could materially interfere with our, our affiliates, third parties with whom we transact, or similarly situated third party's ability to establish, maintain or unwind all or a material portion of a hedge that could be effected with respect to the ETNs, including, but not limited to:
>
> •    a suspension, absence or material limitation of trading in option or futures contracts relating to the Index, the VIX Index, the S&P 500® Index, the component securities of the S&P 500® Index, or to the underlying futures, if available, on their respective Primary Exchange or Related Exchange, as determined by the Calculation Agents,
>
> •    option or futures contracts relating to the Index, the VIX Index, the S&P 500® Index, the component securities of the S&P 500® Index, or the underlying futures, if available, not trading on their respective Primary Exchange or Related Exchange, as determined by the Calculation Agents,

- the Index Sponsor or the CBOE fails to publish or compute the Indices or VIX Index, or

- any trading restriction imposed upon, option or futures contracts relating to the Index, the VIX Index, the S&P 500® Index, the component securities of the S&P 500® Index, or to the underlying futures, if available, on their respective Primary Exchange or Related Exchange due to a price change in that respective instrument exceeding limits set by that market before the close of trading in that market on any day, as determined by the Calculation Agents.

27.     Defendants had not announced a Market Disruption Event on February 5, 2018.

28.     The Notes were due to mature on December 4, 2030 ("Maturity Date"). However, Credit Suisse had the right to accelerate redemption if the indicative value dropped by 80% or more on a given day.  As stated in the Registration Statement, early redemption could occur, at Credit Suisse's discretion:

> if, at any point, the Intraday Indicative Value is equal to or less than twenty percent (20%) of the prior day's Closing Indicative Value.

29.     The statements in the Registration Statement, described in paragraphs 23-25, above, were materially false and misleading when made because they misrepresented the updating and accuracy of the Intraday Indicative Value, and they failed to disclose that:

   a.   The Intraday Indicative Value was not updated every 15 seconds based on the relevant index real time calculation of the relevant index (SPVXSPID) applying the real time prices of the relevant VIX futures contracts; and

   b.   The Intraday Indicative Value was not an accurate gauge of the economic value of the Notes.

30.     In addition, the representation of the Intraday Indicative Value during the Class Period was materially false and misleading because it did not reflect the proper calculation of that metric pursuant to the Registration Statement. As alleged below, the Intraday Indicative Value was incorrectly inflated, causing the price of XIV to be inflated.

**XIV Collapses**

31.     Between 4:10 p.m. and 5:09 p.m. on February 5, 2018, the Intraday Indicative Value, as calculated and disseminated by Credit Suisse's agent, JIC, was incorrectly represented to be between $24.7 to $28.6 per Note.  That surge should have reduced the Intraday Indicative Value.

32.     The Intraday Indicative Value between 4:10 p.m. and 5:09 p.m. -- had it been calculated as Credit Suisse represented in the Registration Statement -- was between $4.22 and $4.4 per Note, materially less than the inflated amount of $24.7 to $28.6 per Note.

33.     Beginning at 5:10 p.m., the Intraday Indicative Value began to update, showing a value of $4.22 per Note.

34.     XIV was inflated as a result of the inflated Intraday Indicative Value, trading at $92.80 per Note at 4:09 p.m. and falling to $37.34 per Note at 5:10 p.m. The trading price of the Notes hit a low of $10 per Note at 6:30 p.m. and closed at 8:00 p.m. at $15.43.

35.     On February 6, 2018, Credit Suisse issued a press release stating that it was accelerating the Maturity Date:

> Since the intraday indicative value of XIV on February 5, 2018 was equal to or less than 20% of the prior day's closing indicative value, an acceleration event has occurred. Credit Suisse expects to deliver an irrevocable call notice with respect to the event acceleration of XIV to The Depository Trust Company by no later than February 15, 2018. The date of the delivery of the irrevocable call notice, which is expected to be February 15, 2018, will constitute the accelerated valuation date, subject to postponement due to certain events. The acceleration date for XIV is expected to be February 21, 2018, which is three business days after the accelerated valuation date. On the acceleration date, investors will receive a cash payment per ETN in an amount equal to the closing indicative value of XIV on the accelerated valuation date. The last day of trading for XIV is expected to be February 20, 2018. As of the date hereof, Credit Suisse will no longer issue new units of XIV ETNs.
>
> On February 2, 2018, the closing indicative value was USD 108.3681. None of the other ETNs offered by Credit Suisse are affected by this announcement.

36.     The last trading day for the Notes was 20, 2018, and they were terminated on February 21.  Credit Suisse obtained substantial financial benefits by accelerating the Maturity Date, because the Notes' value was depressed (and Credit Suisse's redemption payment obligation was reduced) by the acceleration.

37.     Although Plaintiff and members of the Class sustained devastating losses as a result of defendants' conduct, Credit Suisse itself escaped unscathed.  As reported by Bloomberg on February 6, 2018, "Credit Suisse says it has not suffered any trading losses related to the exchanged-traded note[.]"

## COUNT I

### Violations of Section 11 of the 1933 Act (Against Credit Suisse)

38.     Plaintiff repeats and incorporates each allegation contained above, except any allegations that may sound in fraud.

39.     This Count I is brought pursuant to § 11 of the 1933 Act, 15 U.S.C. § 77k, on behalf of the Class, against Credit Suisse as issuer of the Notes.

40.     Plaintiff and the Class purchased the Notes pursuant to, or traceable to, the materially false and misleading Registration Statement.

41.     Plaintiff and the Class have sustained damages in that the value of the Notes has declined substantially from the prices at which they were purchased.

42.      At the time of their purchases of the Notes, Plaintiff and other members of the Class were without knowledge of the facts concerning the untrue statements or omissions herein and could not have reasonably discovered those facts prior to the date of the filing of this Complaint.

43.     Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that

Plaintiff filed this Complaint. Less than three years have elapsed from the time that Plaintiff purchased the Notes upon which this Count is brought to the time Plaintiff filed this Complaint.

## COUNT II

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### (Against Credit Suisse and JIC)

44.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 1 – 37 above as if fully set forth herein.

45.     This Count is asserted against defendants Credit Suisse and JIC for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, on behalf of Plaintiff and other members of the Class, who were damaged thereby.

46.     Defendants employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Notes during the Class Period.

47.     During the Class Period, Credit Suisse and JIC caused to be disseminated and/or or approved the Intraday Indicative Values.  The Intraday Indicative Values were materially false and misleading in that they misrepresented and failed to disclose material facts necessary in order to make them, in light of the circumstances under which they were made, not misleading.

48.     At all relevant times, the market for the Notes was an efficient market for the reason, among others, that the Notes met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated securities market. As a result of the foregoing, the market for the Notes promptly digested current information regarding the Notes from all publicly available sources -- including the misstated Intraday Indicative Value -- and reflected such information in the prices of the Notes.  All purchasers of the Notes during the

Class Period purchased the Notes at artificially inflated prices, and a presumption of reliance applies.

49.     Credit Suisse and JIC acted with scienter in that they knew that the statements issued to investors, namely the false Intraday Indicative Values, were materially false and misleading; knew that such values would be issued or disseminated to the investing public; knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements as primary violations of the federal securities laws; and failed to correct in real time the Intraday Indicative Value.  Defendants were responsible for the calculation, either directly or indirectly, of the Intraday Indicative Values, and knew or recklessly disregarded that such values were materially inflated throughout the Class Period.

50.     Plaintiff and the Class have suffered damages because, in reliance on the integrity of the market, they paid artificially inflated prices for the Notes.  Plaintiff and the Class would not have purchased the Notes at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

51.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages.  Plaintiff and the members of the Class purchased Notes at artificially inflated prices during the Class Period, and the price of those Notes collapsed shortly after the Class Period, when the Indicative Value was updated and Credit Suisse announced an acceleration of the Maturity Date.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying Plaintiff as Class representative under Federal Rule of Civil Procedure 23;

B.      Awarding damages, to the maximum extent permitted by law, in favor of Plaintiff and the other Class members against all defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such equitable, injunctive or other relief as deemed appropriate by the Court.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.


Dated: March 15, 2018


/s/ <i>Andrei V. Rado</i>

**MILBERG TADLER PHILLIPS GROSSMAN**
**LLP**
Ariana J. Tadler
Robert A. Wallner
Andrei V. Rado
One Pennsylvania Plaza, 19th Floor
New York, New York  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
E-mail:  atadler@milberg.com
rwallner@milberg.com
arado@milberg.com


**WILLIAM M. ARON**
Attorney at Law
15 West Carrillo Street
Santa Barbara, CA  93101
Telephone:  (805) 618-1768
Facsimile:   (805) 618-1580
E-mail: bill@aronlawfirm.com


**GIBBS LAW GROUP LLP**
Eric H. Gibbs
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
jak@classlawgroup.com


*Counsel for Plaintiff*

745426v1

13